## COOPER v. THE CENTRAL RAILROAD OF IOWA.

1. **Negligence**: RAILROADS: SAFETY OF EMPLOYES. A railway company is bound to use all reasonable precautions for the safety of its employes, and should furnish such machinery and keep it in such a condition as would be least likely to cause injury. It is not, however, held to the exercise of extraordinary care, and is required to furnish such appliances only as are reasonably calculated to insure the safety of its employes.

2. ———: ———: CONTROL OF SUPERIOR. A fireman upon a locomotive, while in the discharge of his duties as such, may properly be found to have been acting under the immediate control of the engineer.

3. ———: EVIDENCE: ADMISSIONS OF INJURED PARTY. The statements of one injured by the alleged negligence of a railway company, made after the accident, are not conclusive respecting the manner in which the accident occurred and the absence of willful intention to injure him, but may be considered in connection with other circumstances.

4. ———: EFFECT OF CONTRIBUTORY. A party cannot recover for injuries caused by the negligence of another if by his own negligence or wrong he contributed to produce them, unless the latter, after becoming aware of the injured party's negligence, failed to use a proper degree of care to avoid the consequences of it.

5. ———: RAILROADS: INSTRUCTION. In an action against a railway company for injuries alleged to have been caused by the negligent manner of running the train, it was proper to instruct the jury that the defendant should make and publish sufficient and necessary rules for the government of its employes.

6. Instructions: MEASURE OF DAMAGES: VERDICT. Where the jury, in the absence of proper instructions respecting the measure of damages, returned a verdict for an amount which was justified by the evidence, the defendant cannot be held to have suffered prejudice by the omission.

7. ———: ———: PERTINENCY. In an action for damages sustained by an employe of a railway company, an instruction respecting the different degrees of care required to be exercised toward a passenger and an employe is not pertinent to the issues.

8. Negligence: RAILROAD: EXPERT TESTIMONY. The injury being received while a locomotive was running backward, the testimony of an experienced engineer respecting the rate of speed of a locomotive running in that manner which was usually considered safe, was *held* to be competent.

9. ———: ———: ———. He was also properly permitted to testify respecting the effect of striking an animal upon the track by a locomotive running backward.

*Appeal from Marshall District Court.*

THURSDAY, OCTOBER 5.

THIS is an action to recover for personal injuries resulting in the death of plaintiff's intestate, received while he was in the employment of the defendant. It is alleged in the petition that the death of the intestate was caused by the negligence of his co-employes, without his fault. There was a verdict and judgment for plaintiff; defendant appeals.

*Brown, Stone & Sears,* for appellant.

*Sutton & Burritt* and *Henderson & Norton,* for appellee.

BECK, J.—The decedent, at the time of the accident resulting in his death, was employed as a fireman upon a locomotive

which was sent, under proper authority of an officer of defendant, from Oskaloosa to Eddyville, to draw a train of cars from the latter to the former city. The engine, as was the custom in performing like services, there being no turn-table at Eddyville, ran to that place in the usual manner, but, after being attached to the train, proceeded to draw it to Oskaloosa "backwards." After having run a short distance from Eddyville, and while running at the rate of from eight to fifteen miles an hour, the witnesses differing in their statements of the rate of speed as indicated by these figures, the engine struck a cow and, with one or more cars, was thrown from the track. The deceased was at his proper place when the accident occurred and received injuries therefrom of which he shortly died.

The court gave the jury certain instructions at the trial which are made the grounds of many objections urged against the judgment in this court. It is not claimed that these instructions were inapplicable to the case as presented by the evidence. Certain instructions asked by the defendant were refused.

We will first consider the assignments of errrors directed at the court's rulings upon the instructions:

1. The following are two of the instructions given to the jury:

"5. It was the duty of defendant to use all reasonable precaution for the safety of its employes, and among other things it was bound to furnish suitable machinery—materials sound and safe—and to keep it in such condition as would not endanger their safety; such as was least likely to do or cause injury.

1. NEGLI-
GENCE: rail-
roads: safety
of employes.

"6. This, however, does not imply that defendant was bound to use the highest skill, the greatest foresight, the most extraordinary care in procuring the very best appliances; but rather those appliances which were reasonably best calculated to answer the end proposed."

These instructions are the subject of complaint on the part of defendant's counsel. They are copied almost *verbatim* from the opinion of this court in *Greenleaf v. Ill. Cen. R'y*

*Co.*, 29 Iowa, 15 (42). If they differ at all from the rule recognized in that case, it is in the fact that they are more favorable to defendant. We have discovered no reasons for doubting the correctness of the doctrine presented in that case.

Counsel insist that the instructions are erroneous, in that they do not direct the jury as to the effect of the employe's knowledge of the defects of the machinery, and other matters that would charge defendant with the consequences of negligence. But the 12th instruction fully and fairly presented the true doctrine, applicable to this question as it was presented in the case. Its presentation a single time in the instructions was sufficient.

II. Certain instructions, the 7th and 8th, announce a rule based upon the hypothesis that the deceased, when he was injured, was acting in obedience to the directions of some employe having authority to control him.

2. ——: ——: control of superior.

The doctrine of the instruction is not denied, but counsel insist that it was not applicable to the evidence, claiming that there was no evidence upon this point of fact. Their position is not sustained by the record. The deceased was under the control of the engineer, and it was his duty to accompany the engine. The engineer had orders to perform the trip with his engine in the manner it was accomplished. The jury were surely authorized to find that deceased accompanied the engineer, and discharged all duties while he was upon the engine, under the control of his immediate superior.

III. After deceased was injured, he made certain statements in regard to the accident which defendant claims were, as evidence, advantageous to its side of the case. The court instructed the jury upon this evidence in the following language:

3. ——: evidence: admissions of injured party.

"9. The admissions of the deceased shortly before his death will be considered by the jury with great care, and all the circumstances in connection therewith, his suffering, whether he was in such condition as to speak with mature consideration and due deliberation, and whether he spoke in regard to his legal rights, or whether he referred to and meant that defendant was not to blame for any willful intention to injure him or

cause said accident, and then give his admission such meaning as you believe from all the circumstances he intended it to have, and give such weight to his statement or admission as in your judgment it may be entitled to. And the admission of deceased will not be conclusive as to what he states. But you will consider all the testimony in relation to said matters and will then come to such conclusion in relation thereto as in your judgment the whole evidence will justify."

The rule of this instruction is not assailed, but counsel complain that its language and manner were intended to mislead the jury. We think otherwise. The instruction presents in itself its own best vindication. We think it demands no explanation or construction, in order to defend its doctrines or the language in which they are conveyed. Their correctness is apparent.

IV. In presenting to the jury the doctrine of contributory negligence the court used the following language:

"10. One who is injured by the mere negligence of another cannot recover any compensation for his injury, if he by his own ordinary negligence or willful wrong contributed to produce the injury of which he complains, so that, but for his concurring and co-operating fault, the injury would not have happened to him; except when the direct cause of the injury is the omission of the other party after becoming aware of the injured party's negligence, to use a proper degree of care to avoid the consequences of such negligence."

4. ——: effect of contributory.

Counsel criticise the language of this instruction with severity, and maintain that it does not present the rule upon the subject of contributory negligence as recognized by this court. About all we need say in its defense is this: it is the language quoted and adopted by this court, from a text book usually received as authority. *Spencer v. Ill. Cen. R. Co.*, 29 Iowa, 55, (58).

V. The following is the 11th instruction given to the jury:

"It was the duty of the defendant to use ordinary care and prudence in making and publishing to its employes sufficient and necessary rules for the safe running of its trains and for

Cooper v. The Central Railroad of Iowa.

the government of its employes and as great a degree of safety
5. ——: rail-  for them, taking into consideration their hazard-
roads: instruc-
tion.         ous employment, as could be procured by ordinary
care and prudence, and the more hazardous the employment
the greater is the degree of care required by the law."

As a proposition of law, this instruction is not assailed, but
counsel object to its applicability in this case on the ground
that defendant's negligence in failing to make and publish
proper rules for the government of its employes in operating
trains upon its road was not in issue under the pleadings.
The manner of operating the train when deceased was injured
is alleged in the petition to have been negligent, and is shown
to have been under the direction of the proper officer of the
defendant and not in conflict with any rules promulgated by
the company.  Rules forbidding the operation of trains in
this negligent manner would have been obeyed by defendant's
employes, and the accident would have been avoided.  The
negligence of defendant, then, in running the train, is trace-
able to its failure to provide necessary rules for conducting
its business with proper safety to its employes.  This negli-
gence was put in issue by the pleadings.  The jury were by
the instruction directed to search for it at the very place of
its origin.

VI.  Objections are made to other instructions, which are
nothing more than criticisms of their language and are of
less force even than those above noticed.  They demand no
further attention.  The instructions assailed present correct
rules of law, in language reasonable, accurate and entirely
intelligible.

VII.  The defendant insists that no proper instructions
were given as to the measure of plaintiff's damages.  The
6. INSTRUC-  jury upon this subject ought to have been more
TIONS: meas-  fully instructed.  But defendant could have suf-
ure of dama-
ges: verdict.  fered no prejudice from this omission.  The
amount of the verdict cannot be considered beyond the just
sum that plaintiff ought to recover as his lawful damage.
All that can be said is this: the jury, without proper instruc-
tions, correctly found the damages of plaintiff.  There can be

Cooper v. The Central Railroad of Iowa.

no ground for reversing the judgment. We should state in further explanation of our ruling upon this point, that we have before us all the evidence submitted to the court below.

VIII. The defendant asked an instruction, which the court refused, explaining to the jury the difference in the degree of care to be exercised by a railroad company toward a passenger and an employe. The court, in the instructions given, correctly directed the jury as to the care to be exercised by defendant toward its employes. As the jury had nothing to do with the law in the case of a passenger, the court did well not to burden them with any rules inapplicable to the case submitted to them.

*7. ——:——: pertinency.*

IX. Of the other instructions refused by the court, it may be said, generally, that so far as they were correct their rules were embodied in those given, others were in conflict with the doctrines of those given, and still others were inapplicable to the facts of the case. They were all properly refused.

X. A locomotive engineer was permitted to testify that it was customary in "backing" an engine drawing a train after night, to run very slowly and carefully on account of danger in running trains in that way, and that those operating trains were instructed to exercise care when "backing." He testified as to the speed that is usual and considered safe under such circumstances. This evidence, defendant claims, was incompetent. What men, experienced in business attended by dangers, usually do to avoid such dangers, should certainly be considered in determining the care proper to be exercised to avoid accidents. In all affairs of life we are taught by experience, and the wise man will adopt the experience of others. The witness in this case testified to the care usually exercised by those conducting trains run under the circumstances attending the one upon which the intestate was injured. This would certainly be proper evidence upon the question of care exercised by defendant's employes. It will be observed that the witnesses testified to the precautions which it was customary to adopt in order to avoid danger. To disregard such precautions

*8. NEGLIGENCE: railroad: expert testimony.*

would amount to such negligence as would be chargeable in the absence of ordinary care.

XI. The same witness was permitted to show the effect of an engine striking an animal, as a cow, when running backward. He also explained the structure of a locomotive tender, its height above the track, etc. This evidence was competent. The matters of which he testified pertained to his employment, and he showed himself competent to speak of them; they were not equally within the knowledge of all men of ordinary intelligence.

XII. Another question is presented in defendant's brief involving the correctness of the court's ruling in excluding the answer of a witness to the question: "Can the track be sufficiently examined in passing along without some one looking on both sides of the track?" In the court below defendant excepted to this ruling. In this court defendant's counsel advance reasons which support the ruling of the court below, and seem to assent to it. This relieves us of the duty of further noticing the objections.

The foregoing discussion disposes of all points in the case.

AFFIRMED.

SEEVERS, CH. J., took no part in the decision of this case.